## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CHRISTOPHER WILLIAMS,** Individually and on behalf of all others similary situated, | **Civ. Num. 19-** |
| **Plaintiff,** vs. | **JURY TRIAL DEMANDED** |
| **HIGHER POWER ELECTRICAL, LLC, a Texas Limited Liability Company, COBRA ACQUISITIONS LLC, a Delaware Limited Liability Company, and COBRA ENERGY, LLC, a Delaware Limited Liability Company,** | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. 216(b)** **CLASS ACTION PURSUANT TO FED.R.CIV.P. 23(b)** |
| **Defendants.** | |

_____ /

### COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff, Christopher Williams brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members" or "Plaintiff and the FLSA Collective Members") who worked for Higher Power Electrical LLC ("Higher Power"), Cobra Acquisitions LLC ("Cobra Acquisitions") and Cobra Energy, LLC ("Cobra Energy")(collectively, the "Defendants" or "Cobra"), anywhere within Puerto Rico, at any time during the last three years through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b), and the Labor Transformation and Flexibility Act, which amended provisions of 29 L.P.R.A. §§271 _et. seq._

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA while his Puerto Rico Commonwealth claims are asserted as a class action under Federal Rule of Civil Procedure 23(b)(3).

# I.
# OVERVIEW

1.       Hurricane Maria devastated the Commonwealth of Puerto Rico in September and October of 2017.   Almost immediately thereafter, on October 17, 2017, the Puerto Rico Electric Power Authority entered into a $200.0 million emergency master services agreement with Cobra Acquisitions LLC (the "First Master Contract") to restore electricity on the island.   PREPA and Cobra Acquisitions subsequently amended the PREPA Contract to increase the total contract amount up to $945.0 Million.   In or around May 2018, PREPA and Cobra entered into a second master services agreement worth an additional $900.0 Million (the "Second Master Contract", together with the First Master Contract, the "PREPA Contracts"), for a grand total of approximately $1.8 Billion.   The scope of the work provided for in the PREPA Contracts included labor, supervision, tools and equipment to perform storm repairs at various locations in Puerto Rico.   Cobra charged PREPA approximately $4,000.00 per day per skilled worker (this number was later revised down to $3,760 per day).   Cobra, through its affiliated entity, Higher Power, recruited skilled workers[1] and offered to pay them a daily rate for their work as follows:

      a.      General Foreman - $1,400.00 per day

      b.      Foreman - $1,250 per day

      c.      Journey Lineman - $1,000.00 per day

      d.      Class A Lineman - $900.00 per day

      e.      Class B Lineman - $800.00 per day

      f.      Hot Apprentice - $700.00 per day

      g.      Experienced Operator - $800.00 per day

---

[1] Pursuant to the initial PREPA contract, Cobra provided 250 skilled workers.  This number was increased to at least 672 skilled workers in subsequent amendments and/or addenda to the original contract.

     h.         Inexperienced Operator - $600.00 per day

     i.          Ground Hand - $600.00 per day

     j.         Mechanic - $900.00 per day

2.      While Defendants paid Plaintiff, and all others similarly situated their day rates, they failed to pay them one and one-half times their regular hourly rate for every hour that was worked over eight (8) in a day and/or forty (40) in a given workweek.

3.      This lawsuit includes both a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and a class action pursuant to the commonwealth laws of Puerto Rico and Federal Rule of Civil Procedure 23, to recover unpaid wages, unpaid overtime wages, unpaid bonuses and other applicable interest, penalties, costs and fees.

4.      Plaintiff and the Putative Class Members are those similarly situated skilled laborers who have worked for Defendants following Hurricane Maria anywhere within the Commonwealth of Puerto, within their relevant statutes of limitations through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime in violation of the FLSA and Puerto Rico commonwealth law.

5.      Specifically, Defendants have enforced a uniform company-wide policy wherein they purported to pay a day rate without paying overtime compensation for those hours worked in excess of eight in a day or forty hours in a given workweek.

6.      Instead, Defendants utilized a mathematical equation based off of a 16 hour work day $(40x + 72(1.5x) = \text{day rate})$, to manufacture pay stubs that reflect a regular hourly rate for 40 hours of work, and an overtime rate that exactly matches the day rate offered to Plaintiff and the Putative Class Members prior to starting work in Puerto Rico.

7.      Pursuant to this common pay scheme, no matter how many hours Plaintiff or the Putative Class Members worked, he always received solely the day rate—no more.  Defendants failed

to pay Plaintiff and the Putative Class Members one and one-half times their regular hourly rate for each hour worked over 8 in a day or 40 in a week.

8.      Defendants' company-wide policy has caused Plaintiff and the Putative Class Members to have hours worked that were not properly compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

9.      Although Plaintiff and the Putative Class Members have routinely worked in excess of eight (8) hours per day and forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of eight (8) hours per day and forty (40) hours per workweek.

10.     Defendants have knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members the proper amount of overtime on a routine and regular basis in the last three years.

11.     Plaintiff and the Putative Class Members did not perform work that meets the definition of exempt work under the FLSA or Puerto Rico commonwealth law.

12.     Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all damages owed under the Puerto Rico Labor Transformation and Flexibility Act and the Constitution, as a class action pursuant to Federal Rule of Civil Procedure 23.

13.     Plaintiff prays that all similarly situated workers (FLSA Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

14.     Plaintiff also prays that the Rule 23 class be certified as defined herein, and that Plaintiff Williams designated herein be named as Class Representative for the Puerto Rico Commonwealth Class.

## II.
## THE PARTIES

15.     Plaintiff Christopher Williams ("Williams") was employed by Higher Power in Puerto Rico during the relevant time period as a "Experienced Groundman."   Plaintiff Williams did not receive the correct amount of overtime compensation for all hours worked in excess of eight (8) hours per day or forty (40) hours per workweek.[2]

16.     The FLSA Collective Members are those current and former skilled laborer employees identified in Paragraph 1 above who were employed by Defendants at any time during the last three years through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Williams worked and was paid i.e. a day rate without overtime compensation.

17.     The Puerto Rico Commonwealth Class Members are those current and former skilled laborer employees identified in Paragraph 1 above who were employed by Defendants in the Commonwealth of Puerto Rico at any time from the one year prior to the filing of this Complaint through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Williams worked and was paid.

18.     Defendant Higher Power Electric, LLC is a Texas limited liability company, authorized to do business and doing business in Puerto Rico.

19.     Defendant Higher Power serves customers nationwide, directly and through various divisions, subsidiaries and affiliates, however constituted.

20.     Defendant Higher Power is a covered employer under the FLSA and acted as such in relation to Plaintiffs and the Putative Class Members.

---

[2]  The written consent of Christopher Williams is hereby attached as Exhibit "A."

21.     Higher Power can be served with process through its registered agent: **The Prentice Hall Corporation System, Puerto Rico, Inc., c/o Fast Solutions, LLC, Citi Tower, 252 Ponce de Leon Avenue, Floor 20, San Juan, PR, 00918.**

22.     Defendant Cobra Acquisitions, LLC is a Delaware limited liability company, authorized to do business and doing business in Puerto Rico.

23.     Defendant Cobra Acquisitions serves customers nationwide, directly and through various divisions, subsidiaries and affiliates, however constituted.

24.     Defendant Cobra Acquisitions is a covered employer under the FLSA and acted as such in relation to Plaintiffs and the Putative Class Members.

25.     Defendant Cobra Acquisitions can be served with process through its registered agent: **The Prentice Hall Corporation System, Puerto Rico, Inc., c/o Fast Solutions, LLC, Citi Tower, 252 Ponce de Leon Avenue, Floor 20, San Juan, PR, 00918.**

26.     Defendant Cobra Energy, LLC, is a Delaware limited liability company, authorized to do business and doing business in Puerto Rico.

27.     Defendant Cobra Energy serves customers nationwide, directly and through various divisions, subsidiaries and affiliates, however constituted.

28.     Defendant Cobra Energy is a covered employer under the FLSA and acted as such in relation to Plaintiffs and the Putative Class Members.

29.     Defendant Cobra Energy can be served with process through its registered agent: **The Prentice Hall Corporation System, Puerto Rico, Inc., c/o Fast Solutions, LLC, Citi Tower, 252 Ponce de Leon Avenue, Floor 20, San Juan, PR, 00918.**

30.     On information and belief Cobra Acquisitions, Cobra Energy and Higher Power acted in all respects material to this action as the agent of the other, carried out a joint scheme, business plan

or policy in material respects hereto, and the acts of Cobra Acquisitions, Cobra Energy and Higher Power are legally attributable to each other.

31.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' business or affairs and with the authorization of the Defendants.

## III.
## JURISDICTION & VENUE

32.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

33.     This Court has supplemental jurisdiction over the additional Puerto Rico commonwealth-law claims pursuant to 28 U.S.C. § 1367.

34.     This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District, including securing a multimillion dollar contract with the Puerto Rico Electric Power Authority to provide disaster relief services to Puerto Rico.

35.     Venue is proper in the District of Puerto Rico because this is a judicial district in which the Defendants' are authorized to conduct business and in fact conduct business.

36.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

37.     In order to fulfill the PREPA Contracts, Cobra advertised for skilled labor positions nationwide.

38.     Plaintiff and the Putative Class Members responded to the job advertisements and underwent a pre-employment screening, filed an application for employment, underwent a background check, and attended a new hire orientation, all conducted by Defendants.

39.     At the orientation, Plaintiff, and the Putative Class Members, were told that they would be working, on an emergency basis, pursuant to a FEMA/PREPA contract, to restore electricity to parts of Puerto Rico.

40.     Plaintiff was offered and paid a day rate for an "Experienced Operator" position.

41.     On information and belief, every skilled laborer hired by Cobra to work in Puerto Rico was offered and paid a day rate in accordance with the schedule outlined in Paragraph 1 above.

42.     Plaintiff Williams was employed by Higher Power, in connection with the PREPA Contract entered into by Cobra Acquisitions, in Puerto Rico from approximately November 2017 until August 2018.

43.     On information and belief, Defendants continued to pay the Putative Class Members pursuant to the same day rate scheme through August 2018, after which Defendants began paying an hourly wage to their skilled laborers.

44.     Plaintiff and the putative class members' job duties consisted of, among other things, the following: (i) line maintenance, repair and construction, including preparing and assembling various line apparatus required for the work being performed; (ii) driving and operating various public service vehicles; (iii) communicating with power plant dispatch regarding opening/closing and tagging/untagging of circuits while work is being performed; (iv) digging trenches; (v) assembling conduits and placing them in the trenches; (vi) installation of various underground apparatus; (vii) assisting with and pulling wire; (viii) verifying proper grounding of line truck; (ix) installing poles; and (x) preparing and installing pole mount transformers.

45.     On information and belief Cobra was initially paid approximately $4,000 per day that Mr. Williams worked by PREPA pursuant to the PREPA Contract.  On information and belief this daily rate was reduced to approximately $3,760 per day in or around January of 2018.

46.     On information and belief, Cobra was paid approximately $4,000 per day for each member of the putative class pursuant to the PREPA Contract.  On information and belief this daily rate was reduced to approximately $3,760 per day in or around January of 2018.

47.     On information and belief, members of the putative class were compensated anywhere from $600 to $1,400 per day depending on the nature of their duties.

48.     Plaintiff and the putative class members are non-exempt skilled laborer employees who were paid solely a day rate regardless of the number of hours worked or nature or their duties.

49.     Plaintiff and the putative class members worked approximately 12 to 16 hours a day 7 days week.

50.     Plaintiff and the putative class members received a paycheck for the total number of days worked each workweek, but the hourly rate did not change based on the number of hours worked.

51.     Notwithstanding the day rate payment scheme, the pay stubs received by Plaintiff and the putative class members, reflected an hourly rate for approximately 40 hours of regular time and 72 hours of overtime (7x16 = 112 hours).  The Defendants manufactured an hourly rate and overtime rate for each member of the putative class based on the following formula:

a.     $40x + 1.5x(72) =$ Promised Day Rate

52.     As an example, for those employees paid $800 per day, like Mr. Williams, they received a weekly pay check totaling $5,600.00 (7 x $800=$5,600), as follows:

a.     $40(x) + 1.5x(72) = \$5,600.00$

b.     $40x + 108x = \$5,600.00$

c.     $148x = \$5,600.00$

d.     $X = \$37.84/hr$

e.     $1.5X = \$56.76/$overtime hour

f.      $40(\$37.84) + 72(\$56.76) = \$5,600.00$

53.     When questioned by Plaintiff and other members of the putative class as to why their paystubs reflected an hourly rate, Cobra representatives stated that the paystubs needed to include an hourly rate and overtime rate for "legal" purposes, but not to worry because Plaintiff was receiving the day rate as promised.

54.     As a result of this fraudulent payment scheme, Plaintiff and the putative class members did not receive payment of their true and correct regular rate and were not compensated at all for overtime hours actually worked.  *See* 29 C.F.R. §§ 778.108 (the "regular rate"), 778.109 (the regular rate is an hourly rate), 778.112 (day rate); see also 29 L.P.R.A. 273.

55.     Plaintiff and the putative class members have not been properly compensated for all the hours they worked for Cobra as a result of Cobra's corporate policy and practice of paying solely a day rate without paying additional overtime compensation.

56.     As a result of Cobra's corporate policy Plaintiff and the putative class members were not compensated for all hours worked, including all worked in excess of eight (8) per day or forty (40) in a workweek at the rates required by the FLSA and Puerto Rico law.

57.     Cobra has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

58.     Cobra is aware of its obligation to pay overtime for all hours worked and the proper amount of overtime for all hours worked in excess of eight (8) per day and forty (40) each week to Plaintiff and the putative class members, but has failed to do so.

59.     Because Cobra did not pay Plaintiff and the putative class members time and a half for all hours worked in excess of eight (8) per day and forty (40) in a workweek, Cobra's pay policies and practices violate the FLSA as well as the laws of the Commonwealth of Puerto Rico.

## V.
## CAUSES OF ACTION

## COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A.      FLSA COVERAGE**

60.      All previous paragraphs are incorporated as though fully set forth herein.

61.      The FLSA Collective is defined as:

**ALL SKILLED LABOR EMPLOYEES WHO WERE EMPLOYED BY THE COBRA DEFENDANTS PURSUANT TO THE PREPA CONTRACTS, AS AMENDED, AT ANY TIME FROM APRIL 15. 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members").**

62.      At all material times Defendants have been employers within the meaning of Section 203(d) of the FLSA, which is defined to include any person acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. 203(d).

63.      At all material times, Defendants have been an enterprise within the meaning of Section 203(r), as they engaged in related activities, through one or more related and/or affiliated entities for the common business purpose of providing emergency storm repair services to the Common Wealth of Puerto Rico pursuant to those certain PREPA Contracts whereby PREPA agreed to pay up to an amount totaling $1.8 Billion.

64.      Mammoth Energy Services, Inc. ("Mammoth Energy"), parent company to each of the Defendants, advertises for all of its affiliated entities or divisions through its website www.mammothenergy.com (last visited March 19, 2019).  Mammoth boasts that it is an integrated, growth oriented energy service company, serving companies engaged in the construction of energy infrastructure, specifically, government-funded utilities, private utilities, public investor-owned utilities and cooperative utilities through its energy infrastructure services division.  *Id.*

65.      The infrastructure services division is advertised under the name Cobra Energy. www.mammothenergy.com/divisions/cobra-energy/ (last visited March 18, 2019).  Cobra Energy is

a full service Infrastructure, Construction Company centering on most facets of the utility industry, focusing on Transmission and Distribution (T&D) networks, substation and all aspects of EPC. *Id.*

66.     Each of the Defendants operate within the Cobra Energy division of Mammoth Energy, and together, the Cobra companies have over 1,000 employees and operate nationally and internationally. www.cobratd.com (last visited March 18, 2019).

67.     Further, with respect to Cobra's involvement in Puerto Rico, Defendants state:

> Cobra Energy deployed crews and associated equipment to help ensure the safety and welfare of the people affected by Hurricane Maria.  Due to the significant destructive nature of the storm, Cobra continues to aid in the restoration of the power grid and the rebuilding of the power infrastructure. Moving closer to restoring power and dignity to the people of Puerto Rico.

www.cobratd.com (last visited March 18, 2019).

68.     Notwithstanding the unified advertising approach, Cobra and Mammoth refer to the "family member" corporations as divisions denoting a unified corporate structure rather than truly independent and unaffiliated entities.

69.     Cobra Acquisitions entered into the PREPA Contracts, with the contractual obligations to provide the services envisioned thereunder.

70.     In furtherance of that common business goal, Higher Power and Cobra Energy provided the skilled labor and equipment.

71.     Plaintiff's pay records as well as the new hire paperwork, and job application originally submitted indicate that they are from Higher Power.

72.     Defendants clearly operate as one entity despite separate corporate forms.

73.     The Defendants agreed to allocate responsibility for, or otherwise codetermined key terms and conditions of the Plaintiff's and putative class members work and jointly administered training, job duties, and job assignment in Puerto Rico.  The entities combined influence over the

terms and conditions of the Plaintiff's and the putative class members' employment renders the Plaintiff's, and putative class members, employees of all the Defendants.

74.     Upon information and belief, Defendants operate the Cobra business enterprise out of their headquarters in Oklahoma.

75.     Upon information and belief, Defendants utilize a holding company structure for other Cobra entities, such as the other Defendants here.

76.     Upon information and belief, Defendants utilize different named entities in different states to operate their Cobra Energy division.

77.     However, these entities are jointly operated out of Cobra Energy's headquarters in Oklahoma and have common officers and directors, states of incorporation, and listed principal places of business.

78.     Upon information and belief, Cobra's business is a centralized, top-down operation controlled by the Cobra Defendants.

79.     Upon information and belief, there is common ownership between the Cobra Defendants, as they are all wholly owned subsidiaries of Mammoth Energy.

80.     Upon information and belief, the Defendants jointly determine, share or allocate responsibility for payroll matters.

81.     Upon information and belief, the Defendants jointly determine, share or allocate responsibility for workers' compensation insurance matters.

82.     Upon information and belief, the Defendants jointly determine, share or allocate responsibility for payroll tax matters.

83.     Upon information and belief, the Defendants jointly determine, share or allocate responsibility for human resources matters, including but not limited to the hiring and firing of employees.

84.     Upon information and belief, the Defendants jointly determine, share or allocate responsibility for marketing/advertising matters.

85.     It is clear that Cobra fulfilled its obligations pursuant to the PREPA Contracts as one common business enterprise with a common business purpose of providing emergency storm repair services to the Puerto Rico Electric Power Authority.

86.     Plaintiff and the Putative Class Members in this action were jointly employed by the Defendants under the FLSA and have standing to bring their claims against Cobra on a collective basis.

87.     Defendants, Higher Power, Cobra Acquisitions, and Cobra Energy, in conjunction with their respective parents, divisions, subsidiaries or affiliates in the United States, however such divisions, subsidiaries or affiliates are constituted, have at material times done business under the name of Mammoth Energy, Cobra Acquisitions, Cobra Energy and Higher Power Electricity in the United States and commonwealth territories.

88.     These Defendant entities directly or indirectly acted in the interest of an employer toward Plaintiff and other similarly situated employees, including without limitation directly or indirectly controlling the terms and conditions of employment and compensation of Plaintiff and others similarly situated.

89.     Defendants, Higher Power, Cobra Acquisitions, and Cobra Energy, and each of their respective parents, divisions, subsidiaries or affiliates, however constituted, were joint employers of Plaintiff and other similarly situated skilled laborer employees in their respective territory or territories because each, respective parent, division, subsidiary or affiliate acted directly or indirectly in the interest of the other in relation to Plaintiff and such similarly situated persons.

90.     Higher Power, Cobra Acquisitions, and Cobra Energy, and each of their respective parents, divisions, subsidiaries or affiliates, however constituted for all nationwide and commonwealth

location(s) at issue, were joint employers of the Plaintiff and the similarly situated skilled laborer employees in their respective territories because they commonly controlled the terms of compensation and conditions of employment of Plaintiff and others similarly situated, and are not completely disassociated with respect to the terms of compensation and conditions of employment of Plaintiff and others similarly situated.

91.     Defendants, Higher Power, Cobra Acquisitions, and Cobra Energy, directly or indirectly acted in the interest of an employer toward Plaintiff and other similarly situated employees at locations in the United States and its common wealth territories at all material times, including without limitation directly or indirectly controlling the terms and conditions of employment and compensation of Plaintiff and other workers similarly situated.

92.     At all material times relevant to this action, Defendants Higher Power, Cobra Acquisitions, and Cobra Energy were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §§ 203(r) and 203(s).

93.     At all material times, the Defendants have each been an enterprise in commerce or in the production of goods for commerce within the meaning of section 203(s)(l) of the FLSA because each of the individual Defendants has had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

94.     At all material times, the Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.00 collectively.

95.     At all material times, the individual Defendants each had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.00.

96.     During Plaintiff and FLSA Collective Members' employment  Defendants employed at least two employees who handled goods, materials and supplies which travelled in interstate commerce, such as power lines, specialty trucks, back hoes, digging equipment, electrical transformers,

as well as other equipment utilized in the provision of specialized power and electrical restoration services, and other items used to run the business.

97.     During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals have provided services for Defendants that involved interstate commerce for purposes of the FLSA.

98.     In performing the operations described above, Plaintiff and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

99.     Plaintiff and the FLSA Collective Members are non-exempt skilled laborers who were employed by Defendants to fulfill the PREPA Contract within the Common Wealth of Puerto Rico. 29 U.S.C. § 203(j).

100.    At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

101.    The proposed class of similarly situated employees, i.e. putative opt-in plaintiffs, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 61.

102.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of the Defendants.

## B.    FAILURE TO PAY OVERTIME PREMIUMS UNDER THE FAIR LABOR STANDARDS ACT

103.    Cobra violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all of the hours they worked in excess of forty

(40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

104.     Moreover, Cobra knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty each week. 29 U.S.C. § 255(a).

105.     Cobra knew or should have known its pay practices were in violation of the FLSA.

106.     Cobra is comprised of sophisticated parties and is a sophisticated employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

107.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Cobra to pay them according to the law.

108.     The decisions and practices by Cobra to not pay for all hours worked and the proper amount of overtime for all hours worked over forty each week was neither reasonable nor in good faith.

109.     Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

110.     All previous paragraphs are incorporated as though fully set forth herein.

111.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Cobra's employees hired to perform skilled labor pursuant to the PREPA Contract in Puerto Rico who have been similarly situated to Plaintiff with regard to the manner in which they were paid.

112.     Other similarly situated employees of Cobra have been victimized by Cobra's patterns, practices, and policies, which are in willful violation of the FLSA.

113.     The FLSA Collective Members are defined in Paragraph 61.

114.     Cobra's failure to pay Plaintiff and the FLSA Collective Members for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Cobra—a day rate only policy--and  does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

115.     Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

116.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid proper overtime premiums for all hours worked in excess of forty (40) hours per workweek.

117.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

118.     Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Cobra will retain the proceeds of its violations.

119.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

120.     Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 50 and notice should be promptly sent.

<u>**COUNT TWO**</u>
**(Class Action Alleging Violations of Puerto Rico Wage Payment Statute, 29 L.P.R.A. §§271 et. seq.)**

**A.     VIOLATIONS OF PUERTO RICO WAGE LAWS**

121.     All previous paragraphs are incorporated as though fully set forth herein.

122.     Plaintiff Williams further brings this action pursuant to Fed. R. Civ. P. 23(b)(3) for back wages, interest and liquidated damages under the Puerto Rico Wage Payment Statute, 29 L.P.R.A.§§271 et. seq.

123.     The Puerto Rico Common Wealth Class is defined as:

**ALL SKILLED LABOR EMPLOYEES WHO WERE EMPLOYED BY THE COBRA DEFENDANTS PURSUANT TO THE PREPA CONTRACT, AS AMENDED, AT ANY TIME FROM APRIL 15, 2016 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Puerto Rico Commonwealth Class" or "Puerto Rico Commonwealth Class Members").**

124.     It is unlawful under Puerto Rico law for an employer to suffer or permit a nonexempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek or more than 8 hours in one day.

125.     In fact, Article II, Section 16 of the Puerto Rico Constitution provides that no worker shall work more than eight hours per day, and 29 L.P.R.A. § 273(a) defines overtime as "hours that an employee works for an employer in excess of eight (8) hours during any calendar day."

126.     Cobra violated Article II, Section 16 of the Puerto Rico Constitution and 29 L.P.R.A. § 273(a), by regularly and repeatedly failing to properly compensate Plaintiff for all his compensable overtime actually worked and failing to do so in the time required by the Constitution and 29 L.P.R.A. § 273 (a). "The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection to his health or person in his work or employment, and to an ordinary workday which shall not exceed eight hours. An employee may work more than this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed."

127.     Cobra willfully failed to pay overtime to Plaintiff.

128.     Cobra willfully, regularly and repeatedly failed to pay Plaintiff and the Puerto Rico Commonwealth Class Members at the required overtime rates of one and one-half times his regular rates of pay for hours worked in excess of eight (8) hours per day or forty (40) hours per workweek.

129.     As a result of Cobra's willful violations of the applicable Puerto Rico Labor Laws, Plaintiff and the Puerto Rico Commonwealth Class Members are entitled to recover their respective unpaid compensation, liquidated damages (double damages), as provided for by the Puerto Rico Labor Law, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## B.     PUERTO RICO COMMONWEALTH CLASS ALLEGATIONS

130.     Plaintiff Williams brings his Puerto Rico Commonwealth Claims as class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by the Cobra Defendants pursuant to the PREPA Contracts in Puerto Rico since April 15, 2016.

131.     Class action treatment of Plaintiff Williams and the Puerto Rico Commonwealth Class Members' claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

132.     The number of Puerto Rico Commonwealth Class Members is so numerous that joinder of all class members is impracticable.

133.     Plaintiff Williams is a member of the Puerto Rico Commonwealth Class, his claims are typical of the claims of the other Puerto Rico Commonwealth Class Members, and he has no interests that are antagonistic to or in conflict with the interests of the other Puerto Rico Commonwealth Class Members.

134.     Plaintiff Williams and his counsel will fairly and adequately represent the Puerto Rico Commonwealth Class Members and their interests.

135.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Specifically, some of the questions of law common to the Class that predominate over individual questions affecting solely individual members, include, but are not limited to the following:

      a.      Whether paying solely a day rate with no other form of overtime compensation violates Puerto Rico Law;

      b.      Whether Cobra violated Puerto Rico law by failing to pay overtime wages to the Plaintiff and Class Members;

      c.      Whether Plaintiff and the Class Members are entitled to overtime pay;

      d.      Whether Cobra made and maintained accurate records of all time worked by Plaintiff and Class Members;

      e.      Whether Plaintiff and the Class Members are entitled to liquidated damages;

136.    Accordingly, the Puerto Rico Commonwealth Class should be certified as defined in Paragraph 123.

## VI.
## RELIEF SOUGHT

84.    Plaintiff respectfully prays for judgment against Defendants as follows:

      a.      For an Order certifying the FLSA Collective as defined in Paragraph 61 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

      b.      For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.      For an Order pursuant to section 16(b) of the FLSA finding the Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), civil penalties, and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d.      For an Order certifying the Puerto Rico Commonwealth Class as defined in Paragraph 123 and designating Plaintiff Wilson as the Class Representative of the Puerto Rico Commonwealth Class;

e.      For a Declaratory Judgment that the practices complained of herein are unlawful under the FLSA;

f.      For an Injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g.      For a Declaratory Judgment that the Defendants are joint employers of the Plaintiff and the putative class members, as well as alter egos of each other;

d.      For an Order pursuant to the Puerto Rico wage laws awarding the Puerto Rico Commonwealth Class Members all damages allowed by law;

f.      For an Order awarding the costs and expenses of this action;

g.      For an Order awarding attorneys' fees;

h.      For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

i.      For an Order awarding Plaintiff Wilson a service award as permitted by law;

j.      For an Order compelling the accounting of the books and records of the Defendants , at Defendants' expense; and

k.     For an Order granting such other and further relief as may be necessary and appropriate.

Date:   April 16, 2019                    Respectfully submitted,

**ATTORNEYS FOR PLAINTIFFS,**
**BECKER & VISSEPO, PSC**

S/Jane Becker Whitaker
**JANE BECKER WHITAKER**
USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel. (787) 945-2406
E-mail:jbw@beckervissepo.com
janebeckerwhitaker@gmail.com

S/Jean Paul Vissepó Garriga
**JEAN PAUL VISSEPÓ GARRIGA**
USDC No. 221504
PO Box 367116
San Juan, PR 00936-7116
Tel. (787) 633-9601 / E-mail: jpv@beckervisseppo.com
jp@vissepolaw.com

                              **MORGAN & MORGAN, P.A.**

              By:     /s/ Paul M. Botros
                      **Paul M. Botros, Esq.**(pro hac vice application anticipated)
                      FBN 0063365
                      **Andrew Frisch, Esq.** (pro hac vice application anticipated)
                      FBN
                      600 N. Pine Island Road, Suite 400
                      Plantation, FL 33324
                      Telephone:     (954) 327-5352
                      Facsimile:     (954) 327-3017
                      Email:  pbotros@forthepeople.com

                      *Attorneys for Plaintiff and the Putative*
                      *Class Members*